Joshua W. Carden, SBN 021698
Joshua Carden Law Firm, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Harris and Caitlyn Polston, a married couple,<br><br>       Plaintiffs,<br><br>v.<br><br>Chicanos Por La Causa, Inc.,<br><br>       Defendant. | **ORIGINAL COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

Plaintiffs Eric Harris and Caitlyn Polston, by and through the undersigned counsel, hereby seeks relief under the Family Medical Leave Act (FMLA); and Arizona's Paid Sick Time Law as follows:

## PARTIES

1. Plaintiff Eric Harris was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" of Chicanos Por La Causa, Inc. within the meaning and purposes of all relevant statutes at all times material to this action.

2. Plaintiff Caitlyn (pronounced Catt-lin) Polston was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" of Chicanos Por La Causa, Inc. within the meaning and purposes of all relevant statutes at all times material to this action.

3. Mr. Harris and Ms. Polston are a married couple.

4. Defendant Chicanos Por La Causa, Inc. ("CPLC") is an Arizona nonprofit corporation, at all relevant times conducting its business in Maricopa County, Arizona.

5. CPLC was an "employer" of Plaintiffs within the meaning and purposes of all



1

relevant statutes at all times material to this action.

6. Defendant employs more than 500 people.

7. At all times pertinent to this Complaint, Defendant's managerial employees were acting within the course and scope of their employment with Defendant; and as a result thereof, Defendant are responsible and liability is imputed for the acts and omissions of their managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

8. All acts alleged in this Complaint occurred in Maricopa County, Arizona.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. Pendent jurisdiction over the related state law claims is invokes pursuant to 28 U.S.C. § 1367.

10. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant' premises located in Maricopa County, State of Arizona.

11. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

12. CPLC is one of the largest community development corporations in Arizona, focused on Latino individuals and families with low to moderate income levels.

13. CPLC employed Mr. Harris beginning October 21, 2019, most recently as a client support specialist.

14. CPLC employed Ms. Polston for more than 8 years, most recently in its "step down" program as an intake and referral specialist.

15. In March 2020, Plaintiffs departed on a planned vacation out of state.

16. While out of state, the COVID-19 pandemic was declared.

17. Plaintiffs returned home and returned to work March 11, 2020.

18. On March 15, CPLC announced that a mandatory staff meeting would be held the next day (Monday, March 16, 2020) to discuss the CPLC response to the newly-declared pandemic.

19. At the same time, Plaintiffs learned that a co-worker had been exposed to the virus



and was quarantining.

20. Plaintiffs realized that it was the same co-worker that they had socialized with that weekend.

21. During the staff meeting, Plaintiffs raised several safety concerns with CPLC management.

22. CPLC management, *inter alia*, announced that starting the next day, March 17, CPLC would be implementing "work from home" for as many employees as possible, and requiring quarantining for any employees who had traveled out of state.

23. Plaintiffs pointed out that they had just returned from out of state, and asked whether they should quarantine.

24. CPLC management stated "no, this starts tomorrow" or words to that effect.

25. CPLC management also noted that they would not be providing any personal protective equipment to employees, though most had significant contact with members of the public and/or one another.

26. Plaintiffs informed management that they were very concerned as both Plaintiff have disabilities that placed them at heightened risk were they to be infected with the virus.

27. Plaintiffs pressed the quarantine issue after the meeting, and were granted permission to quarantine by CPLC management, although quite reluctantly and only after checking with "legal."

28. Rather than allow Plaintiffs to work from home, both were placed on "leave" – their official CPLC emails were switched off.

29. CPLC has a combined vacation/paid sick time policy.

30. Although Ms. Polston was out of paid sick time or vacation at the time Plaintiffs began their quarantine, Mr. Harris' first part of leave was covered by his own paid sick time allotment.

31. On or about April 2, 2020, CPLC contacted Plaintiffs to discuss their options.

**Mr. Harris**

32. Mr. Harris had been employed less than a year and CPLC informed him that he was



not yet eligible for FMLA and directed him to apply for and utilize short-term disability instead.

33. CPLC informed Mr. Harris that he would need to contact his supervisor every 30 days and provide doctor's notes at that interval documenting his need to remain on leave.

34. Mr. Harris met with his doctor on April 3, 2020 and scheduled a follow-up visit for April 28, 2020, in order to comply with these instructions.

35. Mr. Harris and his doctor completed and submitted the necessary forms to apply for short-term disability.

36. On April 17, 2020, CPLC fired Mr. Harris "effective April 10, 2020," claiming that he had failed to keep in contact with CPLC.

37. This was a false claim, and Mr. Harris reminded CPLC of the conversation and instructions given to him on April 2, 2020, to no avail.

38. On April 21, 2020, CPLC informed Mr. Harris that they were submitting CPLC's portion of the short-term disability claim forms and confirmed that they were sending Mr. Harris his final check, including 16 hours of PTO.

39. Upon information and belief, Mr. Harris was terminated because of his own disability, his use of paid sick time, his application for short-term disability, his association with his wife and her disability, or any combination of the above.

**Ms. Polston**

40. Unlike Mr. Harris, Ms. Polston was FMLA-eligible.

41. Furthermore, Ms. Polston's disabilities were known to her co-workers and supervisors.

42. On March 27, 2020, Ms. Polston's supervisor recommended that she contact CPLC HR and ask for FMLA and short-term disability paperwork.

43. On April 2, 2020, after meeting with her doctor, Ms. Polston requested the FMLA paperwork from CPLC.

44. On April 3, 2020, Ms. Polston sent another email to CPLC requesting the paperwork and did not get a response.

45. On April 6, 2020, Ms. Polston checked her work email and found it had been re-



4

1 activated.

46. She had an email from CPLC with the FMLA paperwork, despite the fact that she requested it be sent to her personal e-mail address.

47. She printed the paperwork and faxed it to her doctor on April 7, 2020.

48. On April 8, 2020, Ms. Polston received an email from CPLC (this time to her personal email address) stating that CPLC had not yet received the FMLA paperwork supporting her absence.

49. Ms. Polston replied that the paperwork had been received on April 6, and sent to the doctor on April 7.

50. Approximately 5:15 p.m. the same day, April 8, CPLC informed Ms. Polston that as of April 9, she would no longer be an employee of CPLC, claiming that her position was being eliminated as the "step down" program was being terminated.

51. Upon information and belief, every other individual in that program was transferred to a different CPLC program, and there were several positions for which Ms. Polston was eligible and qualified.

52. As Ms. Polston had run out of her vacation/paid sick time allotment before quarantining, she did not receive a payout of any accumulated hours after her termination.

53. Upon information and belief, Ms. Polston was terminated because of her own disability, her request and application for FMLA leave, her application for short-term disability, or any combination of the above.

54. Upon information and belief, Defendant counted Plaintiffs' jobs in applying for and receiving Paycheck Protection Program loans or other government financial assistance programs provided during the pandemic.

55. Upon information and belief, Defendant have failed to post the required notices to employees under the FMLA and Arizona's Paid Sick Time Law.

56. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

**FIRST CAUSE OF ACTION – FMLA INTERFERENCE (POLSTON ONLY)**

57. By reference hereto, Plaintiff Polston hereby incorporates the preceding paragraphs.



58. Plaintiff Polston provided prompt and reasonable notice to Defendant of her need to quarantine on the advice of a healthcare provider.

59. Plaintiff Polston was eligible for FMLA leave and requested it from Defendant, and provided the necessary paperwork to her doctor in a timely fashion.

60. The FMLA requires Defendant to restore Plaintiff Polston to her same or equivalent position following her medical leave; instead Defendant terminated Plaintiff during the application process.

61. Upon information and belief Defendant considered Plaintiff's medical condition requiring FMLA leave and/or or Plaintiff's application for FMLA leave as a negative factor in making the decision to terminate her.

62. Defendant's termination of Plaintiff for her need for leave to which she was entitled under the FMLA, before Plaintiff had the opportunity to utilize that leave (whether paid or unpaid) had the effect of interfering with Plaintiff's rights under the FMLA.

63. Defendant has thus interfered with Plaintiff's rights under the FMLA in violation of 29 U.S.C. § 2615.

64. Defendant has caused Plaintiff economic damages by violating the FMLA.

65. Because Defendant's violations were committed without good faith, Plaintiff is entitled to an equal additional amount as liquidated damages under the FMLA.

66. Plaintiff is further entitled to equitable relief as determined by the Court.

**SECOND CAUSE OF ACTION – VIOLATION OF ARIZONA PAID SICK TIME LAW (HARRIS ONLY)**

67. By reference hereto, Plaintiff Eric Harris hereby incorporates the preceding paragraphs ¶¶ 1- 56.

68. Arizona has adopted a Paid Sick Time law, A.R.S. §§ 23-371, *et seq*.

69. A.R.S. § 23-364(B) states:

> No employer or other person shall discriminate or subject any person to retaliation for asserting any claim or right under this article, for assisting any other person in doing so, or for informing any person about their rights. Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities



shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

70. Defendant violated A.R.S. § 23-364 as described herein, by terminating Plaintiff for asserting his claim to take sick leave and while taking sick leave.

71. Additionally, upon information and belief, Defendant failed to provide notice of Plaintiff's rights under A.R.S. 23-364 as required by law.

72. A.R.S. § 23-364(C) authorizes a private right of action for any private party injured by a violation.

73. A.R.S. § 23-364(G) mandates a remedy of an amount "sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final."

74. Defendant's discrimination and/or retaliation were committed without justification or excuse.

75. As a direct result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $150.00 per day until final judgment, and the failure to post and keep proper records penalties under § 23-364(F).

**THIRD CAUSE OF ACTION – ERISA VIOLATION (BOTH PLAINTIFFS)**

76. By reference hereto, Plaintiffs hereby incorporate the preceding paragraphs.

77. During a period of eligibility, Plaintiffs requested coverage under CEA's short term disability plan.

78. Defendant terminated Plaintiffs almost immediately upon discovery that they were applying for short-term disability.

79. Defendant's actions were adverse to Plaintiff.

80. Defendant took the adverse actions primarily for the improper purpose of interfering with Plaintiffs' rights and benefits under ERISA in violation of ERISA § 510.

81. As a result of Defendant's actions, both Plaintiffs were denied coverage with the reason given that they were not employees and therefore not eligible to receive short-term disability.



82. Plaintiffs request that they be awarded all statutory penalties, damages (including the benefits lost), and such other relief deemed proper under ERISA for the violation.

## FOURTH CAUSE OF ACTION – ADA DISCRIMINATION (BOTH PLAINTIFFS)

83. Note: this claim is pending exhaustion of administrative remedies. This case is filed "early" due to the need to preserve Mr. Harris' Paid Sick Time claim, which, unlike the other claims herein, has a one-year statute of limitations. Permission to amend will be sought when this claim is ripe.

## FIFTH CAUSE OF ACTION – ADA RETALIATION (BOTH PLAINTIFFS)

84. Note: this claim is pending exhaustion of administrative remedies. This case is filed "early" due to the need to preserve Mr. Harris' Paid Sick Time claim, which, unlike the other claims herein, has a one-year statute of limitations. Permission to amend will be sought when this claim is ripe.

## JURY TRIAL DEMANDED

85. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal and/or state law;
B. Assessing applicable civil fines and penalties against Defendant as authorized under the statutes cited herein;
C. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;
D. Directing Defendant to place Plaintiffs in the position they would have occupied but for Defendant' unlawful actions, and make them whole for all earnings he would have received, including, but not limited to, back pay, front pay, pension, and other lost benefits;
E. Awarding Plaintiffs compensatory damages in an amount to be determined by the jury;



8

F. Awarding Plaintiffs statutory and liquidated damages in an amount to be determined by enforcement of the statutes herein;

G. Awarding Plaintiffs pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

H. Granting such other and further relief, including equitable relief authorized by the cited statutes, as this Court deems necessary and proper.

Respectfully submitted on this 9th day of April, 2021,

                                        Joshua Carden Law Firm, P.C.

                                        By: s/Joshua W. Carden
                                        Joshua W. Carden
                                        *Attorneys for Plaintiffs*